# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

IN THE MATTER OF THE COMPLAINT )
OF PARKER TOWING COMPANY, INC., )
AS OWNER AND OPERATOR OF THE ) CIVIL ACTION 17-0489-WS-C
M/V TOUCHSTONE ENERGY )

## ORDER

This matter comes before the Court on claimant Christopher James Williams' Motion to Lift Stay (doc. 17). Claimant PowerSouth Energy Cooperative and defendant, Parker Towing Company, Inc., have filed responses in opposition to the Motion (docs. 22 & 23), and Williams has filed a reply (doc. 27). The Motion is now ripe.

**I.     Background.**

On or about June 5, 2017, the M/V TOUCHSTONE ENERGY, a vessel owned and operated by Parker Towing Company, Inc., was operating in the Tombigbee River, near Jackson, Alabama. During those operations, Christopher Williams, a member of the vessel's crew, sustained injuries when he was struck by a cable while working aboard the vessel. At the time, the M/V TOUCHSTONE ENERGY was securing two barges to the dock of the Lowman Power Plant owned and operated by PowerSouth Energy Cooperative. Pursuant to a contract of affreightment between Parker Towing and PowerSouth, Parker Towing was engaged to transport coal via towboats and barges to the Lowman facility.

On September 27, 2017, Williams commenced a lawsuit (the "State Court Action") seeking damages under the Jones Act and general maritime law against Parker Towing and PowerSouth, arising out of the accident and injuries he incurred while working aboard the M/V TOUCHSTONE ENERGY. The complaint, which was filed in the Circuit Court of Washington County, Alabama, alleged causes of action predicated on the negligence of Parker Towing and/or PowerSouth and the unseaworthiness of the vessel.

On November 6, 2017, Parker Towing filed the instant Complaint for Exoneration from or Limitation of Liability (doc. 1) in this District Court, pursuant to 46 U.S.C. §§ 30501 *et seq.* Three days later, upon review and approval of Parker Towing's *Ad Interim* Stipulation for Value in the sum of $314,000, the undersigned directed as follows:

> "The further prosecution of any pending actions, suits or legal proceedings in any court whatsoever, and the institution and prosecution of any suits, actions or legal proceedings of any nature and description whatsoever in any court, except in this proceeding for exoneration from or limitation of liability, against Parker Towing, its controllers, underwriters, insurers, or the M/V TOUCHSTONE ENERGY, in respect of any claim arising out of or in connection with that vessel's voyage on or about June 5, 2017, be and the same are hereby **STAYED AND RESTRAINED** until the hearing and determination of this action."

(Doc. 4, at 2.) One effect of the November 9 Order was to stay the State Court Action.

In these exoneration/limitation proceedings, both PowerSouth and Williams have filed claims against Parker Towing. Specifically, PowerSouth invokes contract provisions stating that Parker Towing was responsible for ensuring that the barges were properly secured, and alternatively asserts common-law claims of indemnity and contribution for all sums that PowerSouth may be required to pay as a result of Williams' claims. For his part, Williams asserts claims against Parker Towing on theories of negligence, unseaworthiness of the vessel, failure to pay maintenance and cure, and punitive damages.

Now Williams comes forward with a Motion to Lift Stay, in which he seeks leave of court to continue pursuing the State Court Action against Parker Towing and PowerSouth in accordance with the statute conferring exclusive jurisdiction on federal district courts for "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). Parker Towing and PowerSouth oppose Williams' request to lift the stay.

**II. Analysis.**

Under the Limitation of Liability Act, 46 U.S.C. §§ 30501 *et seq.*, "[f]ederal courts have exclusive admiralty jurisdiction to determine whether the vessel owner is entitled to limited liability." *Beiswenger Enterprises Corp. v. Carletta*, 86 F.3d 1032, 1036 (11th Cir. 1996). In such an action, persons asserting claims against the vessel "form a *concursus* that allows the district court to determine the liability of the owner to each individual in a single proceeding, constraining the total liability to the value of the vessel." *Offshore of the Palm Beaches, Inc. v. Lynch*, 741 F.3d 1251, 1257 (11th Cir. 2014); *see also Beiswenger*, 86 F.3d at 1036 ("If the vessel owner is found liable, but limitation is granted, the admiralty court distributes the limitation fund among the damage claimants in an equitable proceeding known as a *concursus*.").[1]

---

[1] This procedure has been concisely summarized in the following terms:
(Continued)

Notwithstanding these principles, the Eleventh Circuit has long observed that "this exclusivity of admiralty jurisdiction rubs up against the 'saving to suitors' clause, which grants to the district courts original jurisdiction over admiralty cases, 'saving to suitors in all cases all other remedies to which they are otherwise entitled.' 28 U.S.C. § 1333." *Offshore of the Palm Beaches*, 741 F.3d at 1258. This clause "embodies a presumption in favor of jury trials and common law remedies in the forum of the claimant's choice." *Id.* (citation omitted). "Thus, a certain tension between the exclusive jurisdiction vested in admiralty courts to determine the vessel owner's right to limited liability and the saving to suitors clause has developed." *Beiswenger*, 86 F.3d at 1037. To resolve this tension, courts have carved out certain narrow exceptions to the exclusivity provisions of the Limitation Act.

The parties in the case at bar are in agreement that this action presents what has come to be known as a "multiple-claims-inadequate-fund" situation. Indeed, there are "multiple claims" because each of PowerSouth and Williams is asserting separate claims against Parker Towing, including Williams' personal injury claims and PowerSouth's claims of contribution and indemnity. *See Beiswenger*, 86 F.3d at 1042 ("to determine whether a multiple-claims-inadequate-fund situation exists, potential claims for indemnity or contribution from the vessel owner's co-defendants must be separately considered"). Moreover, there is an "inadequate fund" because it does not appear that "the limitation fund exceeds the aggregate amount of all the possible claims against the vessel owner." *Id.* at 1037.[2] The Eleventh Circuit has held that in a

---

"When faced with liability for a maritime accident, a vessel owner may file a petition in federal court seeking protection under the Limitation Act. … If the limitation is granted, and the vessel owner subsequently is found liable, the admiralty court distributes the limitation fund among the damage claimants in an equitable proceeding known as concursus. … Claimants asserting valid claims receive a *pro rata* distribution of the fund deposited or secured, or the proceeds of the vessel and pending freight."

*Tug Allie-B, Inc. v. United States*, 273 F.3d 936, 940 n.2 (11th Cir. 2001).

[2] Williams' own Stipulations confirm that he is not "stipulating to or agreeing to $314,000 as the combined value of petitioner's interest in the M/V TOUCHSTONE ENERGY and her pending freight." (Doc. 18-1, ¶ 9.) Thus, Williams declines to stipulate that "the vessel owner is not exposed to liability in excess of the limitation fund," *Beiswenger*, 86 F.3d at 1037, which places this case squarely in the "inadequate fund" scenario.

"multiple-claims-inadequate-fund" case, a claimant may pursue common-law remedies in his or her chosen forum only where "appropriate stipulations" are made, as follows:

> "By entering such stipulations, the damage claimants effectively guarantee that the vessel owner will not be exposed to competing judgments in excess of the limitation fund. Without such competition for the limitation fund, a *concursus* is unnecessary, … and the claimants may litigate liability and damages issues in their chosen fora."

*Id.* at 1038 (citations omitted).

The parties' divergent positions on Williams' Motion to Lift Stay hinge on the adequacy or inadequacy of particular stipulations submitted by Williams. Among the considerations that have been emphasized in evaluating such stipulations are that (i) "the stipulations must protect the vessel owner's right to litigate its claim to limited liability exclusively in the admiralty court;" and (ii) "the stipulations must protect the vessel owner from having to pay damages in excess of the limitation fund, unless and until the admiralty court denies limited liability." *Beiswenger*, 86 F.3d at 1044; *see also Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 455, 121 S.Ct. 993, 148 L.Ed.2d 931 (2001) ("this Court's case law makes clear that state courts, with all of their remedies, may adjudicate claims like petitioner's against vessel owners so long as the vessel owner's right to seek limitation of liability is protected"); *Offshore of the Palm Beaches*, 741 F.3d at 1258 (claimant may not pursue claim in another forum unless its stipulations "effectively guarantee that the vessel owner will not be exposed to competing judgments in excess of the limitation fund") (citation omitted); *In re Louisiana Dock Co.*, 157 F. Supp.2d 1267, 1269 (S.D. Ala. 2001) (recognizing that stay should not be lifted unless "the claimant files a stipulation that fully protects the petitioner's rights under the Limitation Act").

In light of the foregoing, the key question is whether Williams' stipulations adequately safeguard Parker Towing's rights under the Limitation Act, including both its right to litigate limitation issues exclusively in this admiralty court and its right to be insulated from paying damages in excess of the limitation fund unless this admiralty court first denies limited liability. To that end, Williams filed Stipulations dated January 31, 2018, including the following: (i) a stipulation in which he "concedes the right of the parties to have all limitation issues tried in this Court" (doc. 18, Exh. A, ¶ 5); (ii) a stipulation acknowledging the exclusive jurisdiction and authority of this Court to determine all issues relating to Parker Towing's entitlement to limit its liability in this matter (*id.*, ¶ 6); (iii) a stipulation "that in the event there is a judgment or recovery in the state court action in excess of $314,000.00, … in no event will [Williams] seek to

enforce that excess judgment or recovery insofar as same may expose Parker Towing … on a direct or tort-contribution basis, to liability in excess of $314,000.00 unless and until the admiralty court denies limited liability" (*id.*, ¶ 9); (iv) a stipulation that Williams will not seek in any court "any judgment in excess of whatever amount this court determines to be Parker Towing Company, Inc.'s limited liability, if any" (*id.*, ¶ 10); (v) a stipulation that if Williams obtains a judgment in excess of the value of the limitation fund, "in no event will [Williams] seek to enforce such excess judgment or recover against Parker Towing … insofar as such enforcement may expose Parker Towing … to liability in excess of the limitation by this Court" (*id.*, ¶ 12); and (vi) an express waiver of "any claim of res judicata or issue preclusion that might arise on the basis of any judgment obtained in any state court relevant to … limitation of liability based on any judgment or ruling which may be recovered or granted in any state court" (*id.*, ¶ 13.)

Notwithstanding the comprehensive nature of these Stipulations, both Parker Towing and PowerSouth balk that they are insufficient. For its part, Parker Towing argues that "Williams's stipulations fail to appreciate and ameliorate the risk that a judgement against PowerSouth in favor of Williams would present to Parker's ability to limit its liability." (Doc. 23, at 7.) In other words, suppose Williams obtains a large money judgment against PowerSouth in state court, and PowerSouth in turn prevails on its contribution / indemnity claims against Parker Towing in state court. In that event, Parker Towing posits, "Williams's stipulations do nothing to preclude PowerSouth from proceeding to execute its judgment against Parker" Towing. (*Id.*) Of course, Williams has not limited his ability to recover against PowerSouth to the value of Parker Towing's limitation fund; therefore, Parker Towing reasons, "any contribution claim by PowerSouth may exceed the limitation fund as well." (*Id.* at 8.) In short, Parker Towing expresses concern that Williams' stipulations do not adequately protect it from a scenario in which (i) Williams prevails against PowerSouth in an amount exceeding the limitation fund, and (ii) PowerSouth (which has not stipulated to anything) goes after Parker Towing in contribution or indemnity for that excess amount. PowerSouth makes the same point, emphasizing that it "does not consent, join in or agree with Williams' stipulations, nor does Powersouth otherwise agree to limit its rights." (Doc. 22, at 5.) According to PowerSouth, in the absence of any stipulations by PowerSouth (or waiver of res judicata on the basis of a state court judgment in its favor), a favorable judgment for PowerSouth against Parker Towing "would then be a claim

against the shipowner that was not subject to limitation," which would then compromise Parker Towing's rights under the Limitation Act. (*Id.* at 6.)

The nonmovants' objections are curious because the scenario about which Parker Towing and PowerSouth express concern appears to be adequately covered by Williams' existing stipulations. In Stipulation #9, Williams stipulates "that in the event there is a judgment or recovery in the state court action in excess of $314,000, whether against Parker Towing … ***or any other liable party … who have made or may make cross claims or claims over against Parker Towing*** … in no event will Claimant seek to enforce that excess judgment or recovery insofar as same may expose Parker Towing … on a direct ***or tort-contribution basis, to liability in excess of $314,000.00*** unless and until the admiralty court denies limited liability." (Doc. 18, Exh. A, at ¶ 9 (emphasis added).) On its face, this language would appear to provide ample protection to Parker Towing from being exposed to liability in excess of the $314,000 limitation fund based on PowerSouth's contribution and indemnity claims. After all, Williams is effectively promising not to enforce any excess judgment it might obtain against PowerSouth, and thereby to avoid exposing Parker Towing to any liability in excess of that limitation fund as to PowerSouth's contribution and indemnity claims, pending a ruling on Parker Towing's right to limitation in these admiralty proceedings. Neither Parker Towing nor PowerSouth offers any explanation for their contention that Stipulation #9 is inadequate.

To eradicate any remaining vestiges of doubt, Williams has filed a set of Supplemental Stipulations (doc. 26) that unambiguously and unequivocally neutralize the stated concerns of Parker Towing and PowerSouth. Notably, Supplemental Stipulation #15 provides as follows:

> "The Claimant will not seek to enforce any judgment rendered in any state court, whether against … Parker or another person or entity that would be entitled to seek indemnity or contribution from [Parker], by way of cross-claim or otherwise, that would expose Parker Towing … to liability in excess of the limitation fund (to be decided by this court) until such time as this Court has adjudicated … Parker's right to limit that liability."

(Doc. 26, ¶ 15.) Similarly, Stipulation #16 confirms that if this Court does grant limitation and if Williams obtains a state-court judgment against Parker Towing and PowerSouth in excess of the limitation cap, then Williams "shall not enforce any excess judgment against Parker." (*Id.*, ¶ 16.) Stipulation #17 clarifies that in that scenario, Williams "may seek to collect the entire judgment against PowerSouth …, but PowerSouth shall not collect any amount from Parker on a tort-

contribution basis above Parker's limit of liability because Parker's tort liability … would have already been limited to the value of the limitation fund as determined by this" Court.  (*Id.*, ¶ 17.)

Upon careful review of the parties' briefs, and Williams' original and supplemental Stipulations, the Court is satisfied that Parker Towing's rights under the Limitation Act would be fully protected in the event the stay were lifted to enable Williams to pursue his claims in state court.  Specifically, the Court expressly finds that the Stipulations, taken collectively, both protect Parker Towing's right to litigate its claim to limited liability exclusively in the admiralty court, and protect Parker Towing from having to pay damages in excess of the limitation fund, unless and until the admiralty court denies limited liability.

**III. Conclusion.**

For all of the foregoing reasons, Claimant's Motion to Lift Stay (doc. 17) is **granted**.  The stay imposed by the Order (doc. 4) entered on November 9, 2017 is lifted for the limited purpose of allowing claimant Christopher James Williams to litigate liability and damages issues in the Circuit Court of Washington County (and any appellate proceedings resulting from same) in the action styled *Christopher James Williams v. Parker Towing Company, Inc. and PowerSouth Energy Cooperative*, Case No. 65-CV-2017-900062.00.  This Order is expressly conditioned on Williams' Stipulations and Supplemental Stipulations filed in this action, and is entered pursuant to the saving to suitors clause of 28 U.S.C. § 1333(1).  To be clear, all issues involving Parker Towing's rights under the Limitation Act will be decided by this federal court sitting in admiralty in these proceedings.

DONE and ORDERED this 8th day of March, 2018.

s/ WILLIAM H. STEELE  
UNITED STATES DISTRICT JUDGE